UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| PAULA D. WHEELON,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | No. SACV 13-1056-AS<br><br>**MEMORANDUM OPINION AND<br>ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On July 16, 2013, Plaintiff filed a Complaint seeking review of the denial of her applications for Social Security benefits. (Docket Entry No. 1.) The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 12, 13.) On January 21, 2014, Defendant filed an Answer to the Complaint along with the

1

Administrative Record ("A.R."). (Docket Entry Nos. 17, 18.) The parties filed a Joint Stipulation ("Joint Stip.") on April 11, 2014, setting forth their respective positions on Plaintiff's claim. (Docket Entry No. 23.) The Court has taken the matter under submission without oral argument. See C.D. Cal. Local R. 7-15; Case Management Order, filed July 26, 2013. (Docket Entry No. 5.)

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

In September 2010, Plaintiff filed applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). (A.R. 196—211.) Plaintiff alleged an inability to work since February 1, 2008 due to multiple impairments including chronic sciatica of the hip, back, legs, hip spurs, and depression. (A.R. 260.) On October 2, 2012, the Administrative Law Judge ("ALJ"), Helen E. Hesse, examined the record and heard testimony from Plaintiff, medical expert John R. Morse, and vocational expert Howard J. Goldfarb. (A.R. 47—83.) On October 18, 2012, the ALJ issued a decision denying Plaintiff's applications. The ALJ determined that Plaintiff had the following severe impairments: non-specific back pain due to an injury in 2009; osteoarthritis of the left knee, status post replacement in August 2012; and degenerative arthritis of the right hip, status post replacement in December 2010. (A.R. 21.) However, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (See A.R. 21—30.)

Plaintiff requested that the Appeals Council review the ALJ's decision. (A.R. 14—15.) The request was denied on May 20, 2013.

(A.R. 1—7.) The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g); 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in: (1) granting little or no weight to the physical function assessments of Plaintiff's treating physicians, and (2) finding that Plaintiff's subjective complaints in support of her disability claim are not credible. (Joint Stip. 7.)

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error has merit and warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second claim of error.

**A.  The ALJ Failed to Give Specific and Legitimate Reasons for Rejecting the Opinions of Plaintiff's Treating Physicians**

It is well settled that a treating physician's opinion is entitled to greater weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). However, the treating physician's opinion is not "necessarily conclusive as to

either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d at 751, citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). If the treating doctor's opinion is contradicted by another doctor, the treating physician's opinion may be rejected only if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations: sit six hours out of an eight-hour day; stand or walk two hours out of an eight-hour day with normal workday breaks; occasionally lift 20 pounds, frequently lift 10 pounds; occasionally climb stairs, bend, balance, stoop, kneel, crouch, and crawl; precluded from ladders, ropes, or scaffolding; and precluded from concentrated exposure to unprotected heights, dangerous or fast moving machinery. (A.R. 25.) In assessing Plaintiff's residual functional capacity, the ALJ considered medical evaluations conducted by various doctors, including Plaintiff's treating physicians, Dr. Salem and Dr. Ninh, as well as testifying medical expert Dr. Morse and state agency consultant Dr. Pataki. The ALJ gave greatest weight to the opinion

of Dr. Morse, little weight to the opinion of Dr. Ninh, and no weight to the opinion of Dr. Salem. (A.R. 26—28.) Drs. Salem and Ninh are the only treating physicians who assessed the specific functional limitations stemming from Plaintiff's back, hip, and knee impairments. (A.R. 583—590 (Dr. Salem); A.R. 574—581 (Dr. Ninh).)

On June 24, 2011, Dr. Ninh completed a Multiple Impairment Questionnaire, six months after he performed Plaintiff's December 2010 hip replacement. (A.R. 557—58, 564, 574—81.) In the questionnaire, Dr. Ninh acknowledged his monthly treatment of Plaintiff since November 2010 for what he diagnosed as right hip avascular necrosis with severe bone-on-bone osteoarthritis and left knee osteoarthritis. (A.R. 574—81.) Dr. Ninh opined that in an eight-hour work day Plaintiff could: sit for eight hours; stand and/or walk for one hour; get up and move around as needed; lift or carry up to ten pounds frequently and 20 pounds occasionally; and take hourly, 15-minute breaks. (A.R. 576—77.) Dr. Ninh also opined that Plaintiff would be precluded from pushing, kneeling, bending, and stooping. (A.R. 580.) In giving "limited" weight to Dr. Ninh's opinion, the ALJ stated the following:

> While some of the limitations given are generally consistent with the objective medical evidence in the record, some of the limitations are not. One limitation, the need for an unscheduled 15 minute break every 15 minutes [sic] is not consistent with the objective medical evidence of record. The claimant's hip is generally healed by this point in her post operative recovery. The extent of the damage to her knee is unknown as of yet because the magnetic resonance imaging scan of the knee was not performed until months later. Additionally, there are no complaints made by the claimant as recorded in the post

>  operative treatment notes from Dr. Ninh of the need to change positions frequently or of reduced stamina because of her impairments. As such, the objective medical evidence of record does not support this limitation. In addition, the claimant is still capable of some bending and stooping and is not completely precluded from those activities. There are no notations in the treatment notes from Dr. Ninh of problems in these areas. Thus, the undersigned gives little weight to the opinions of Dr. Ninh because the objective medical evidence of record, including the treatment notes and observations from Dr. Ninh, do not support some limitations given.

(A.R. 27.)

The Court agrees with Plaintiff that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Ninh's opinion. (See Joint Stip. 7–16.) Although the Court concurs with the ALJ's finding that Plaintiff's hip pain subsided post-surgery, her finding regarding Plaintiff's knee impairment is unfounded. The ALJ stated that Dr. Ninh could not have known in June 2011 "[t]he extent of the damage to her knee . . . because the magnetic resonance imaging scan of the knee was not performed until months later." (A.R. 27.) However, Dr. Ninh indicated on the questionnaire that he had based his diagnosis on x-ray results which showed osteoarthritis in Plaintiff's knee. (A.R. 575.) Indeed, Dr. Ninh had already examined Plaintiff in light of her left knee complaints on March 29, 2011. (A.R. 553.) Plaintiff complained to Dr. Ninh of pain along with "catching and clicking" noises in her left knee when she twisted and pivoted, as well as pain with weight bearing and walking. (A.R. 553.) Dr. Ninh found a limited range of motion and swelling in her left knee, with

medial and lateral joint line pain and a positive McMurray's test.[1] (A.R. 553.) Based upon Plaintiff's clinical presentation, Dr. Ninh diagnosed a probable meniscal tear along with osteoarthritis in the knee. (A.R. 553.) The subsequent MRI of Plaintiff's knee only confirmed Dr. Ninh's findings of both medial compartment osteoarthritis and a complex degenerative-type tear of the medial meniscus with a probable posterior root tear. (A.R. 686.) The fact that Dr. Ninh was ultimately proven correct by a subsequent MRI does not render his earlier diagnostic opinion or his assessment of Plaintiff's functional limitations any less valid at that earlier point in time.

The only other rationale the ALJ used to give little weight to Dr. Ninh's functionality assessment was that his treatment notes did not reference the limitations he endorsed in his questionnaire responses, namely the need to change positions frequently, reduced stamina, or a preclusion of bending and stooping. (A.R. 27.) However, as the Ninth Circuit has recognized, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel — not to provide evidence for disability determinations." Orn, 495 F.3d at 634 (9th Cir. 2007). Here, the fact that Dr. Ninh failed to include references to Plaintiff's specific functional limitations in the notes that he maintains in order to facilitate treatment does not cast doubt upon his

---

[1] A positive McMurray test results from possible damage to the menisci, and is accompanied by pain and clicking sounds when the patient's knee is bent. See Physical Examination of the Knee, WebMD, http://www.webmd.com/pain-management/knee-pain/physical-examination-of-the-knee (last visited June 1, 2015).

questionnaire responses in a legal context. See Leckenby v. Astrue, 487 F.3d 626, 633 n.7 (8th Cir. 2007) ("it does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for [specific limitations] during a routine medical examination"). This is especially true given that Dr. Ninh's assessments were based not only on clinical findings and his review of objective laboratory results, but on the information obtained through having performed Plaintiff's hip replacement and knee replacement surgeries. (A.R. 557—558, 778—79.)

The ALJ also gave no weight to the opinion of treating physician Dr. Salem, Plaintiff's primary care provider since September 2007. (A.R. 27, 583, 592.) Dr. Salem conducted x-rays of Plaintiff's pelvis on October 4, 2010, which indicated degenerative changes in both hip joints, more advanced in the right hip, along with another x-ray solely of the right hip showing "severe degenerative changes of the right hip joint." (A.R. 569—70.) Plaintiff also underwent an MRI on November 9, 2010, which indicated further abnormalities in Plaintiff's right hip, some of which were "more than would be expected for osteoarthritis." (A.R. 567.) Plaintiff continued attending monthly visits with Dr. Salem for pain medication and physical therapy until July 2012. (A.R. 601—650, 691—711.)

Dr. Salem completed a Multiple Impairment Questionnaire on July 11, 2011. (A.R. 583—590.) She estimated that, in an eight-hour day, Plaintiff could: sit for two hours; stand/walk for one hour; get up and move for 20 minutes every one to two hours; lift and carry up to ten pounds occasionally. (A.R. 585—88.) In addition, she indicated

that Plaintiff had marked limitations in reaching, and moderate limitations in her ability to perform gross and fine manipulations. (A.R. 585–88.) She found that Plaintiff's symptoms would "constantly" interfere with her ability to maintain attention and concentration, that Plaintiff was incapable of tolerating even a "low stress" work environment, and that Plaintiff would likely miss more than three workdays a month due to her impairments. (A.R. 588–89.)

The ALJ rejected Dr. Salem's opinion for the sole reason that Dr. Salem included limitations on Plaintiff's use of her upper extremities that were not supported by objective medical evidence in the record. (A.R. 27.) It appears that Dr. Ninh agrees with the ALJ on that issue, as he likewise endorsed no limitations in Plaintiff's ability to use her upper extremities. (See A.R. 577–78.) However, rather than deferring to Dr. Ninh's assessment of Plaintiff's upper extremity limitations, or rejecting just that portion of Dr. Salem's opinion, the ALJ invalidated Dr. Salem's entire opinion including her assessments of Plaintiff's back, knee, and hip impairments. (A.R. 28.) See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ failed to provide substantial evidence for rejecting a psychologist's examination report where, *inter alia*, the ALJ "selectively focused on aspects of [the] report which tend[ed] to suggest non-disability"); Magallanes v. Brown, 881 F.2d 747, 753 (9th Cir. 1989) (when weighing a medical opinion, the ALJ need not necessarily agree with everything contained in that opinion and can consider some portions less significant than others when evaluated against the other evidence in the record). The Court finds the ALJ's decision to reject Dr. Salem's entire opinion unreasonable, given

9

that the ALJ could have also inquired of Dr. Salem as to the basis of her upper extremity limitation assessment, or sought additional evidence to explain this conflict in the record. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (an ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.").

Defendant also argues that the ALJ properly discounted Dr. Ninh's and Dr. Salem's physical assessments because they were in the form of a checklist. (Joint Stip. 23.) However, there is a difference between a conclusory "checklist" and a "fill-in-the-blank" form that also calls for comments from the physician in support of his or her answers. Compare Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004) (the ALJ properly discounted a treating physician's opinion where it was "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition, and was based on Batson's subjective descriptions of pain"), with Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ improperly rejected treating physicians' responses, which were made as "check-the-box" answers, where "the questions called not only for yes-or-no answers, but also for comments from the physicians in support of their answers"). Here, Dr. Ninh's and Dr. Salem's physical assessments were each made as part of a questionnaire calling for substantive comments, not a conclusory "checklist." (See A.R. 574—592.) Both of the assessments were also sufficiently supported by medical evidence and objective observations, including laboratory and diagnostic test results. (See A.R. 575, 584.)

10

Accordingly, the ALJ's reasons for rejecting Dr. Salem and Dr. Ninh's opinions are not supported by substantial evidence in the record or reasonable inferences drawn therefrom.

**B.     Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175—78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, supra, 211 F.3d at 1179-81.

It is not clear from the record whether the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy

defects.  Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted).[2]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 4, 2015.

                                     _/s/_____
                                     ALKA SAGAR
                                     UNITED STATES MAGISTRATE JUDGE

---

[2] The Court has not reached the other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact still disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's credibility determination of Plaintiff's subjective complaints.  Because this matter is being remanded for further consideration, these issues should also be considered on remand.